1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10

CENTER FOR BIOLOGICAL DIVERSITY,
et al.,

11

Plaintiffs,

12

CASE NO. C07-1979RAJ

v.

13

ORDER

OFFICE OF THE UNITED STATES
TRADE REPRESENTATIVE,

14
15

Defendant.

16
17

## I. INTRODUCTION

18

This matter comes before the court on cross-motions for summary judgment (Dkt.

19

## 24, 28). For the reasons explained below, the court GRANTS IN PART Plaintiffs'

20

motion (Dkt. # 28) to the extent it requests *in camera* review, GRANTS IN PART

21

Defendant's motion (Dkt. # 24) regarding the draft press materials and the "luminaries"

22

documents, and reserves ruling on all other issues presented in the cross-motions pending

23

*in camera* review.

24

## II. BACKGROUND

25

In September 2006, the United States, acting through the Defendant Office of

26

United States Trade Representative ("OUSTR"), entered into a Softwood Lumber

Agreement ("SLA") with Canada.  The SLA provides for the disbursement of $450 million to "meritorious initiatives" related to certain causes.  *See* Complaint (Dkt. # 1) ¶ 11.  OUSTR identified three meritorious initiatives to receive funding, and Plaintiffs Center for Biological Diversity and Conservation Northwest are among a number of organizations that expressed an interest in the program but were not selected for funding. Malkin Decl. (Dkt. # 16) ¶ 2.

On March 2, 2007, Plaintiffs submitted a request to OUSTR under the Freedom of Information Act ("FOIA"), seeking eight categories of documents including but not limited to, all documents related to OUSTR's selection of the three organizations selected to receive meritorious initiatives funding.  Complaint ¶ 12.  In a March 6, 2007 letter, OUSTR acknowledged receipt of Plaintiffs' FOIA request and indicated that a search for responsive records had begun.  *Id.* ¶ 13.  OUSTR provided twelve responsive documents to Plaintiffs on November 15, 2007, and eight additional documents on December 10, 2007.  Plaintiffs filed this lawsuit on December 10, 2007.

Since the commencement of the lawsuit, OUSTR has released additional responsive documents.  At this point in the proceeding, the OUSTR's revised *Vaughn* index lists approximately 194 documents.  Plaintiffs challenge most of the documents listed on the revised *Vaughn* index and request *in camera* review of those documents, as well as seek additional discovery regarding the adequacy of OUSTR's search for documents and the applicability of exemptions to the documents withheld.

### III.  ANALYSIS

An agency must disclose documents requested under FOIA unless a statutory exemption applies.  5 U.S.C. § 552(b).  FOIA exemptions are narrowly construed.  *See Assembly of State of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992). The agency bears the burden of showing that a withheld document is exempt from disclosure.  5 U.S.C. § 552(a)(4)(B).  The agency must explain with specificity why each document or portion of a document is exempt.  *Vaughn v. Rosen*, 484 F.2d 820, 825-26 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).  An agency's "*Vaughn* index" may

not rely upon "conclusory and generalized allegations of exemptions." *Id*. at 826. The agency "may rely upon detailed affidavits or oral testimony so long as the evidence offered enables the court to make an independent assessment of the government's claim of exemption." *Church of Scientology v. U.S. Dep't of Army,* 611 F.2d 738, 742 (9th Cir. 1979). If the evidence submitted by the agency is not specific enough for the court determine whether a FOIA exemption applies, the court has discretion to examine the disputed documents *in camera*. *See id*. at 742-43.

OUSTR contends that all of the documents listed on the *Vaughn* index are exempt from disclosure under FOIA's fifth exemption. This exemption applies to "inter-agency or intra-agency memorandums or letters which would not be available to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). FOIA Exemption Five also "incorporates the attorney-client privilege, the attorney-work product privilege, and the executive 'deliberative process' privilege that protects candid internal discussion of legal or policy matters." *Maricopa Audubon Soc. v. U.S. Forest Service*, 108 F.3d 1082, 1083 n. 1 (9th Cir. 1997).

The question of whether the "deliberative process" privilege applies "turns on whether disclosure of the requested information would reveal anything about the agency's decisional process." *Carter v. United States DOC*, 307 F.3d 1084, 1088 (9th Cir. 2002). Only opinions or recommendations, not purely factual material, are protected under this privilege. *See In re Franklin Nat'l Bank Sec. Litig*., 478 F. Supp. 577, 581 (E.D.N.Y. 1979). More specifically, a document withheld under the "deliberative process" privilege must be both pre-decisional ("prepared in order to assist an agency decisionmaker in arriving at his decision") and deliberative, in the sense that "the disclosure of the materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Assembly*, 968 F.2d at 920 (internal citations and quotation marks omitted).

OUSTR asserts that the documents listed on its *Vaughn* index are protected by Exemption Five's deliberative process privilege, the attorney work-product privilege, and/or the attorney-client privilege.[1]   A few categories of documents on the *Vaughn* index are sufficiently described to allow the court to conclude that they have been properly withheld, but the court reserves ruling on other categories of documents pending *in camera* review.

**A.      The Draft Press Materials are Exempt From Disclosure.[2]**

Plaintiffs challenge the withholding of documents that they characterize as draft press materials.  They contend that drafts of press materials are not exempt under the deliberative process privilege because they do not pertain to the SLA's policy formation, but only to communications about the policy.  *See Mayer, Brown, Rowe & Maw LLP v. I.R.S.*, 537 F. Supp. 2d 128 (D.D.C. 2008) (ordering the disclosure of draft press releases "because they did not 'bear on the policy formation' involved") (quoting *Wilderness Soc'y v. Dep't of Interior*, 344 F. Supp. 2d 1 (D.D.C. 2004)); *Fisherman's Finest, Inc. v. Gutierrez*, 2008 WL 2782909 at *4 (W.D. Wash. July15, 2008).

In this case, OUSTR seeks to protect draft press releases and question-and-answer ("Q&A") documents that were drafted before the final form of the SLA had been adopted.  Most of these draft press documents, unlike those in cases cited by Plaintiffs, do bear on the policy formation at issue because they were written before the final policy was formed.  *See* Apol Decl. (Dkt. # 33) ¶ 21.  Two of the Q&A documents (P204 and P206) were written after the SLA was implemented, but they reference draft versions of OUSTR's communications policy regarding the SLA.  *See id.* ¶ 20.  Just as Exemption

---

[1] OUSTR also relies upon FOIA Exemption Six for three documents listed on the revised *Vaughn* index (P78, P178, P194), but the withholding or redacting of that personal contact information is not challenged by Plaintiffs.  This information was properly redacted or withheld.

[2] The documents included in this analysis are those listed as press/Q&A documents on the revised *Vaughn* index: P26, P27, P82-85, P90-91, P97, P99-100, P102-04, P113-14, P155, P187, P193, P197-98, P200-201A, P204, P206.

Five applies to documents revealing the deliberative process that culminated in the SLA itself, it also applies to protect documents revealing the deliberative process that culminated in the final SLA communications policy. Final versions of the press releases and Q&A documents have been released to Plaintiffs, but earlier drafts reflecting pre-decisional deliberations were properly withheld or redacted under the deliberative process privilege. The court is satisfied, based on OUSTR's revised *Vaughn* index and the David Apol Declarations, that these documents are protected by Exemption Five.

**B.** **The "Luminaries" Documents are Exempt From Disclosure.[3]**

Plaintiffs challenge the OUSTR's withholding of documents related to the "luminaries" option, contending that there is some evidence that the "luminaries" played a decisionmaking role regarding meritorious initiatives and that they are entitled to at least know their identities.

According to OUSTR, the "luminaries" option refers to "a structure for implementation of the meritorious initiatives portion of the SLA that was considered and, ultimately, not pursued." Apol Decl. (Dkt. # 33) ¶ 17. This evidence is sufficient to allow the court to conclude that documents related to the "luminaries" option are both pre-decisional and deliberative, because they discuss an option that was considered but rejected before the SLA was finalized. The court is satisfied, based on OUSTR's revised *Vaughn* index and the David Apol Declarations, that these documents are protected by Exemption Five.

**C.** **The Court Will Review *In Camera* All Other Documents Not Expressly Exempted From Disclosure in This Order.**

OUSTR's evidence related to the all other documents listed on the revised *Vaughn* index is insufficiently specific to allow the court to determine whether the withholding or redacting was appropriate, and the court will exercise its discretion to conduct an *in*

---

[3] The documents included in this analysis are those listed in the revised *Vaughn* index as related to the "Luminaries" option: P153, P155, P159-163, P164A-177.

*camera* review of the remaining disputed documents. Though the Plaintiffs request additional discovery under Fed. R. Civ. P. 56(f) before the court conducts *in camera* review, Plaintiffs have not shown that proposed discovery is necessary or would provide new information helpful to the court at this stage. After the conducting the *in camera* review, the court will consider whether any of the additional discovery proposed by Plaintiffs will produce information relevant to the court's ultimate resolution of the cross-motions.

Therefore, OUSTR is directed to submit the following documents to the court no later than April 3, 2009: P1-24, P29-74, P87, P93-95, P98, P101, P105-P112, P115-152, P154, P156-P158, P164, P179-186, P189-P192, P195-96, P199, P202-03, P215-99. Where these documents have been provided to Plaintiffs in redacted form, the court requests a copy of both the unredacted document and a copy with the redactions highlighted. Along with the submission of these documents, the court requests that OUSTR supplement its revised *Vaughn* index with the following information for each document:

(1) The author of the document (and if this person is an attorney, indicate whether the person was communicating as an attorney or in some other capacity);

(2) If the deliberative process privilege is claimed, identify the role the document played in the deliberative process; and

(3) A chart or some other summary of the authors and recipients of these documents, and their positions in the decisionmaking hierarchy and/or OUSTR's chain of command.

**IV.  CONCLUSION**

For these reasons, the court GRANTS IN PART both motions (Dkt. ## 24, 28), reserves ruling on the remaining issues, and orders that OUSTR submit the documents as described in the previous section no later than April 3, 2009.  The trial date and all related pretrial dates (Dkt. # 23) are VACATED.

DATED this 13<u>th</u> day of March, 2009.


The Honorable Richard A. Jones
United States District Judge